NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0279n.06

Case No. 22-3506

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jun 15, 2023
DEBORAH S. HUNT, Clerk

TWO BRIDGES, LLC,

    Plaintiff-Appellee,

v.

CITY OF YOUNGSTOWN, OHIO,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

O P I N I O N

Before: CLAY, GRIFFIN, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Two Bridges, LLC owned a building in Youngstown, Ohio that had fallen into serious disrepair. Youngstown deemed the property unsafe pursuant to a city ordinance and had it demolished. Two Bridges did not receive notice of the demolition before it occurred. It sued the city claiming that the city's actions violated its due process rights under the Fourteenth Amendment to the United States Constitution. Youngstown moved for summary judgment on Two Bridges's due process claim, claiming it was protected by statutory immunity under Ohio state law. The district court denied the city's motion, finding that a state-law provision exempting federal claims from statutory immunity applies. Youngstown now brings this appeal. For the reasons that follow, we AFFIRM the judgment of the district court.

I.

Two Bridges bought property, including land and a building, at 15 Oak Hill in Youngstown, Ohio in 2018. The building had been vacant for about four years when Two Bridges bought it, and by 2020, several municipal code violations and related complaints had been lodged against it. The city mailed multiple notices to Two Bridges in the spring and summer of 2019 advising that the building was in unacceptable condition—but it sent the notices directly to the vacant building.[1] No one at Two Bridges received the notices.

The Fire Chief and the city's Code Enforcement Superintendent inspected the building on June 12, 2020, to determine whether it posed a fire hazard. Among other things, they observed that the roof apparently had sunk around 6 to 12 inches on all four sides of the building. From his inspection, the Fire Chief concluded that the building posed a fire hazard and danger to human life; he therefore considered the building an unsafe structure as defined by City Ord. § 1525.01(a)–(b). Under § 1525.01(a)–(b), an "unsafe structure" is, among other things, one that presents a fire hazard or is "otherwise dangerous to human life." And § 1525.01(c) authorizes the local Fire Chief to order the demolition of any unsafe structure in the case of an emergency. Due to "the extreme deterioration of the property and the risk that it posed to potential vagrants . . . and first responders," the Fire Chief ordered an emergency demolition of the building under § 1525.01(c). (R. 27: Barry Finley Affidavit, at PageID 420 ¶ 7; *see also* R. 25-1: Barry Finley Deposition Transcript, at PageID 207 (Emergency Demolition Order)). A little over two months later, on August 22, 2020, Youngstown demolished the building at 15 Oak Hill.

---

[1] Youngstown also attempted to mail notices directly to the property owner at two of his other business addresses. But the mailings were returned by the U.S. Postal Services unclaimed.

Two Bridges filed suit in Ohio state court after the demolition. In its two-count complaint, Two Bridges brought one claim challenging the city's emergency demolition ordinance as violative of Ohio's constitution and a second claim under 42 U.S.C. § 1983, asserting that Youngstown deprived it of its property without due process of law, in violation of the Fourteenth Amendment. Notably, Youngstown removed the case to federal court, acknowledging that Two Bridges sought recovery pursuant to a federal statute, namely 42 U.S.C. § 1983. After the parties completed discovery, Youngstown moved for summary judgment on both counts of the complaint. Relevant here, as to Count 2—the § 1983 claim—the city argued that it was entitled to statutory immunity. The district court granted summary judgment on count one—the state constitutional claim—but denied it as to count two, finding that Two Bridges properly pleaded a federal cause of action which is exempted from immunity under the Ohio Political Subdivision Tort Liability Act, Ohio Rev. Code Ann. §§ 2744.01, *et seq.* Youngstown brought this timely appeal.

II.

In reviewing actions involving questions of state law, generally we apply state substantive law and federal procedural law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938). This principal has some application here where Youngstown seeks to invoke state statutory immunity against Two Bridges's claim—which also, at least according to the city, arises under Ohio law. The first procedural issue we must address is one of jurisdiction. Youngstown asserts that we have jurisdiction by virtue of Ohio Rev. Code Ann. § 2744.02(C), which provides that orders determining the applicability of statutory immunity under the Act are treated as final decisions. But we are governed by federal procedural law on the issue of jurisdiction over an interlocutory appeal, not state law. *Chesher v. Neyer*, 477 F.3d 784, 793 (6th Cir. 2007). And ordinarily, orders

denying summary judgment do not qualify as final orders over which we may exercise appellate jurisdiction. *Id.*; *see also* 28 U.S.C. § 1291.

There are a few exceptions to this general rule under the collateral-order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). Under this doctrine, a district court's summary judgment decision is subject to interlocutory review by this court if it "(1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *Sell v. United States*, 539 U.S. 166, 176 (2003) (cleaned up). Cases where a party has invoked an immunity-from-suit defense, such as sovereign immunity, absolute immunity, or qualified immunity, frequently fall into this category. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993) (sovereign immunity); *Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982) (absolute immunity); *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (qualified immunity to the extent that it turns on a question of law). Both Youngstown and Two Bridges have cited cases involving interlocutory appeals on decisions of qualified immunity to support our jurisdiction. But we are not faced with such a claim here, and the analysis we would apply if we were—whether the question of immunity rests solely upon a question of law—is inapt here. All is not lost, however. As we explained in *Black v. Dixie Consumer Products LLC*, a party who loses on summary judgment based on the court's rejection of an immunity defense may immediately appeal since "the core point of 'immunity is its possessor's entitlement not to have to answer for [its] conduct in a civil damages action.'" 835 F.3d 579, 582 (6th Cir. 2016) (quoting *Mitchell*, 472 U.S. at 525). Key to the equation is whether the immunity at issue would otherwise bar the opponent's claim. Thus, if the immunity in question provides protection from suit, rather than simply protection from liability, then a decision rejecting that immunity satisfies *Cohen's* call for

conclusiveness, separateness and unreviewability and it is appropriate for our appellate review. Pertinent here, Ohio Rev. Code Ann. § 2744 provides Ohio municipalities with a complete defense from suit. *See Range v. Douglas*, 763 F.3d 573, 581 (6th Cir. 2014) (observing in relation to claim for immunity under Ohio Rev. Code Ann. § 2744, that "[s]ince 2003, Ohio statutory immunity has provided complete immunity from suit, which means there is interlocutory jurisdiction"); *see also Chesher*, 477 F.3d at 793–94. We are thus satisfied that we have jurisdiction to consider this appeal.

## III.

We review the district court's denial of Youngstown's summary judgment motion de novo. *Render v. FCA US, LLC*, 53 F.4th 905, 913 (6th Cir. 2022). Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (citing FED. R. CIV. P. 56(c)). "A dispute of a material fact is genuine so long as 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Render*, 53 F.4th at 913 (quoting *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020)); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). We construe the evidence and afford "all reasonable inferences" in favor of the nonmoving party in our review. *Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019) (quoting *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013)).

## IV.

The Act provides that municipalities like Youngstown generally enjoy immunity from tort liability. *Id.* § 2744.02(A)(1) (limiting liability for "political subdivisions"); *see also id.* § 2744.01(F) (broadly defining a political subdivision as a municipality or any entity "responsible

for governmental activities in a geographic area smaller than that of the state"). But the law is subject to certain exceptions. Several exceptions are found in § 2744.02(B) and apply in the context of certain state-law claims. A separate exception applies to federal claims: municipalities are not immune from "[c]ivil claims based upon alleged violations of the constitution or statutes of the United States." *Id.* § 2744.09(E). This carve-out applies to claims brought pursuant to 42 U.S.C. § 1983. *See, e.g.*, *Summerville v. City of Forest Park*, 943 N.E.2d 522, 527 (Ohio 2010); *Patton v. Wood Cnty. Humane Soc'y*, 798 N.E.2d 676, 681 (Ohio Ct. App. 2003); *see also* *Longstreth v. Franklin Cnty. Child. Servs.*, 14 F.3d 601 (Table), 601 (6th Cir. 1993) (per curiam) (noting that political subdivisions are not immune from suits raising federal claims under § 1983). Even so, a plaintiff who nominally brings a § 1983 claim that is, in substance, an action in tort is not permitted to invoke § 2744.09(E). Instead, Ohio courts look to the "essential nature" of a plaintiff's civil action to determine whether the provision applies to a particular claim. *Campbell v. City of Youngstown*, No. 06 MA 184, 2007 WL 4696963, at *3 (Ohio Ct. App. Dec. 31, 2007) (citing *Bram v. Cleveland*, 647 N.E.2d 523, 525 (Ohio Ct. App. 1993)).

In arguing that the § 2744.09(E) carve-out does *not* apply here, Youngstown's argument is twofold, but based on a singular premise—that Two Bridges's claim sounds in state tort law rather than federal law, so the city is protected by statutory immunity. To reach this result, Youngstown first posits that Two Bridges has made out a wrongful demolition claim under state law. Therefore, the only exceptions from statutory immunity are those included in § 2744.02(B)(1)–(5). And since none of those exceptions apply, the city is immune from suit. Its second argument, to the extent that it is a separate argument, is a slight variation of the first: wrongful demolition claims that involve allegations of federal constitutional violations are insufficient to escape the immunity afforded by the statute. Under Youngstown's analysis, § 2744.09(E), which exempts federal

claims from the reach of statutory immunity, simply does not come into play. But bypassing the applicability of § 2744.09(E) gets us nowhere. The central question of this appeal is whether the district court erred in concluding that Two Bridges's claim qualifies as a federal claim and is thus exempt from statutory immunity.

We therefore start with the requirements for a procedural due process claim. We have previously explained that a plaintiff can obtain relief under § 1983 for a violation of procedural due process rights by showing that (1) he possesses a life, liberty or property interest protected by the Due Process Clause, (2) he was deprived of this protected interest within the meaning of the Due Process Clause, and (3) the state did not provide adequate procedural rights before depriving him of his protected interest. *See Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999); *see also Eaton v. Charter Twp. of Emmett*, 317 F. App'x 444, 447 (6th Cir. 2008) (recognizing same in the context of such a § 1983 claim arising from township's demolition of a building without proper notice). And "[g]enerally, the process that is due before the state may deprive an owner of property includes notice to the owner prior to the deprivation and an opportunity for a predeprivation hearing." *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). The record shows that the thrust of Two Bridges's claim—that is, its "essential nature"—concerns these very elements. Count 2 of the complaint specifically cites 42 U.S.C. § 1983 as the source of its claim and goes on to allege facts to demonstrate that the city's application of its demolition ordinance deprived Two Bridges of its right to due process. For example, the complaint asserts that (1) municipal law "requires no notice to a property owner" prior to an emergency demolition; yet (2) the federal Constitution provides that "no person . . . shall be deprived of property without due process of law"; and (3) "plaintiff was given no notice" before the emergency demolition of its building. (R. 1-2: Complaint, at PageID 7 ¶ 8, 8 ¶¶ 22, 26). Viewing these allegations in context, it is

apparent that the claim focuses on Youngstown's alleged failure to afford Two Bridges appropriate procedural safeguards before destroying its property. Indeed, Two Bridges expressly asserts that the city's actions "violate[d] its rights pursuant to the [Fourteenth] Amendment of the Constitution of the United States." And with respect to relief, Two Bridges seeks a declaration that the relevant city ordinance is "unconstitutional under the [Fourteenth] Amendment." Add to that, the complaint follows the basic contours of a § 1983 claim; it avers that, as a result of Youngstown's application of its city ordinance, Two Bridges suffered a "deprivation of a right secured under the Constitution or federal law" which was "caused by a person acting under color of state law." *Alkire v. Irving*, 330 F.3d 802, 813 (6th Cir. 2003) (citing *Brock v. McWherter*, 94 F.3d 242, 244 (6th Cir. 1996)). Such allegations are part and parcel to actions brought under § 1983. *Id.*

While Two Bridges's pleadings consistently emphasize its deprivation of due process under federal law, neither in this court nor before the district court has Youngstown pointed to any evidence in the record that the company has invoked state tort law during this litigation. Thus, accepting its argument would require us to construe the record in its favor rather than in favor of the non-movant—something we cannot do. *See Jackson*, 925 F.3d at 806. And Two Bridges's singular reference to a "wrongful taking" in briefing during the proceedings below does not suggest that it truly pursues a claim for "wrongful demolition" in tort as the city posits. Whatever evidence may have been developed during discovery in this case, the city points to none supporting its position. Under these facts, there is no reason to conclude that a tort claim, rather than a constitutional claim, lies at the heart of Two Bridges's suit.

Youngstown resists this conclusion, however, insisting that "assertions of constitutional violations raised within the context of a wrongful demolition claim are *insufficient as a matter of law* to invoke [the § 2744.09(E)] exception to immunity." (Dkt. 30: Appellant Brief (emphasis

added)).  For support, Youngstown relies on a line of mostly unreported state cases in which the plaintiffs raised federal constitutional issues in their complaints for wrongful demolition but failed to include sufficient allegations to make out a claim under § 1983.  In each of those cases, Ohio courts found the § 2744.09(E) exception inapplicable solely because the pleadings contained scant indicia that the plaintiffs truly sought relief under federal law—not because there exists a blanket rule that claims relating to demolitions always sound in tort, as Youngstown seems to suggest.  For instance, in *Campbell v. City of Youngstown*, the appellate court found that the plaintiff's complaint was missing essential elements of a § 1983 action so there was no federal claim to which § 2744.09(E) should be applied.  2007 WL 4696963, at *4.  And in *Bram v. Cleveland*, which involved the emergency demolition of a property in Cleveland, the court found that the plaintiff's "vague assertion" of constitutional rights as a "general proposition" in a second amended complaint failed to raise anything but a tort claim.  647 N.E.2d at 525.  *See also Broadview Mortgage Company v. City of Cleveland*, No. 61939, 1993 WL 76884, at *3 (Ohio Ct. App. Mar. 18, 1993).  It is perhaps telling that, unlike defendant here, none of the defendants in those state court actions removed the plaintiffs' claims to federal court under federal question jurisdiction. The plaintiffs' claims in each of those cases, at their core, simply did not arise from federal law. That is not the case here for reasons already explained.

In sum, whether a plaintiff can invoke the federal exception to statutory immunity depends on the substance of his claim.  Properly pleaded due process claims under the federal Constitution are not transformed into tort actions simply because they are raised in the wake of a demolition. *See, e.g.*, *Leath v. Cleveland*, No. 102715, 2016 WL 193370, at *2–3 (Ohio Ct. App. Jan. 14, 2016) (treating plaintiff's demolition-related due process claims as constitutional rather than tortious in nature); *Bancplus Mortg. Corp. v. City of Cleveland*, No. 65011, 1994 WL 258644, at *4 (Ohio

Ct. App. June 9, 1994) (same); *Pioneer Sav. & Loan Co. v. City of Cleveland*, 479 F.2d 595, 598

(6th Cir. 1973) (same); *Superior Sav. Ass'n v. City of Cleveland*, 501 F. Supp. 1244, 1250 (N.D.

Ohio 1980) (same).

V.

The district court properly denied summary judgment to Youngstown because the

§ 2744.09(E) federal claim exclusion from immunity applies to Two Bridges's § 1983 claim.  We

therefore AFFIRM.